# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0982V

| | |
|---|---|
| CHIH-JUNG CHEN,<br><br>                     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                     Respondent. | Chief Special Master Corcoran<br><br>Filed: April 4, 2025 |

*Catherine Wallace Costigan*, Maglio Christopher & Toale, PA, Washington, DC, for Petitioner.

*Margaret Armstrong*, U.S. Department of Justice, Washington, DC, for Respondent.

## RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On February 22, 2021, Chih-Jung Chen filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received on October 10, 2020. Petition at 1-3. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

The parties engaged in negotiations (ECF Nos. 33, 35-38), but were unable to resolve the matter on their own, and have now fully briefed entitlement and damages (ECF Nos. 43, 44, 45). For the reasons set forth herein, I find that Petitioner is entitled to compensation, and award damages for actual pain and suffering in the amount of $55,000.00, plus $192.96 for out of pocket medical expenses.

## I.     Factual Evidence
### A. Medical Records

On October 10, 2020, Petitioner received a flu vaccine in her left arm. Ex. 1 at 12, 13. Thirty-eight days later (November 17, 2020), she went to a student health center complaining of arm pain in her left arm after her October 10th vaccination. Ex. 4 at 50. She explained that the evening of vaccination, she developed "a fever 37.6C, sweats/chills, then L arm was painful" for seven days. *Id.* The arm pain continued when lifting heavy items or when reaching overhead or behind her to take off a coat. *Id.* She had "stopped doing her exercises after the flu shot," and had not started any new activities. *Id.* at 51. On examination, she had full range of motion ("ROM"). *Id.* She was advised to take ibuprofen, apply warm compresses, continue to move and stretch, and to follow up if her arm worsened or did not improve. *Id.* at 52.

A month and a half later (January 4, 2021), Petitioner returned to the student health center for left arm pain. Ex. 4 at 54. She complained of pain in her left arm "ever since" the October 10th vaccination. *Id.* She explained that the first few days after vaccination her arm "hurt really bad" and she could not use it. *Id.* The record states that the pain "[w]ore off after first week and stayed painful," (*id.*) which I interpret to mean that the pain lessened, but did not fully go away, about a week after vaccination. Petitioner added that "[l]ast week," her arm pain had worsened. *Id.* On examination, her ROM was limited by pain. *Id.* at 55. The doctor noted that Petitioner had "[e]nduring pain and limitation of ROM 90 days after injection of flu vaccine." Id. at 56. She was assessed with bursitis and advised to use ice and ibuprofen or naproxen, and to follow up with physical therapy ("PT") or an orthopedist if she did not improve. *Id.*

About a month later (February 3, 2021), Petitioner underwent a PT evaluation. Ex. 5 at 3. She complained of left shoulder pain that started after her flu vaccination on October 10th. *Id.* The pain was worst right after waking up, and ibuprofen did not relieve her pain. *Id.* Her pain was zero out of ten at rest, and five out of ten at worst. *Id.* On examination, her left shoulder active ROM was 120 degrees in abduction, 76 degrees in internal rotation, and 38 degrees in external rotation.[3] *Id.* She had full-range, but painful,

---

[3] Normal shoulder ROM for adults ranges from 165 to 180 degrees in flexion, 170 to 180 degrees in abduction, 90 to 100 degrees in external rotation, and 70 to 90 degrees in internal rotation. Cynthia C.

shoulder flexion. *Id.* She had positive signs on the Speed's, Neer's, and Cross-Over tests. *Id.* She was assessed with signs and symptoms consistent with left shoulder derangement with cervical involvement. *Id.* Her long-term treatment goals were to be pain-free and independent with home exercises. *Id.*

Petitioner attended a total of 21 PT sessions between February 3 and April 30, 2021. Ex. 8 at 5-8. At her final session on April 30th, she reported an 80% improvement. Ex. 6 at 4. She continued to have pain ranging between two and three out of ten. *Id.* Her arm was stiff in the morning, but she could complete her activities of daily living mostly without pain. *Id.* The record states that she had demonstrated improvement in pain and ROM, although the ROM documented in the examination section was unchanged from the evaluation. *Id.* She continued to have left arm pain with resisted exercises. *Id.*

Petitioner was formally discharged from PT on May 27, 2021. Ex. 8 at 3. The discharge summary states that she had met all goals,[4] and was feeling good. *Id.*

### B. Declarations

Petitioner filed two declarations in support of her claim. Exs. 3, 13. She states that her left arm became sore on the evening of October 10th.[5] Ex. 13 at ¶ 2. For the first two days after vaccination, she intentionally avoided using her left arm because it was sore when she moved it, even with small motions. *Id.* at ¶ 4.

## II. Factual Findings and Ruling on Entitlement

### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical

---

Norkin and D. Joyce White, MEASUREMENT OF JOINT MOTION: A GUIDE TO GONIOMETRY 72, 80, 84, 88 (F. A. Davis Co., 5th ed. 2016).

[4] The statement that she had met all goals seems somewhat inconsistent with the fact that one of her goals was to be pain-free, and at her final PT session she still reported pain levels of two to three out of ten. Ex. 5 at 3; Ex. 6 at 4.

[5] Petitioner states in her supplemental declaration that her left arm became sore on the evening of October 10, 202*1* – not 202*0*, when she received the vaccine at issue in this case. Ex. 13 at ¶ 2. However, she also states that she received the flu vaccine on October 10, 202*1*. *Id.* at ¶ 1. Thus, I infer that she inadvertently misstated the year, and intended to refer to October 10, 2020 as both the vaccination date and the day that her arm pain began.

3

opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[6] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they "suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine . . . ." Section 11(c)(1)(D).

"[T]he fact that a Petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A

---

[6] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

4

treatment gap . . . does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where Petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May 26, 2022) (finding severity requirement met where Petitioner sought care for four months, followed by fifteen month gap); *Silvestri v. Sec'y of Health & Human Servs.*, No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where Petitioner did not seek additional treatment after the five month mark.

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

### B. Parties' Arguments on Entitlement

Petitioner argues that her medical records, as supported by her testimonial evidence, demonstrate that she felt pain and limited ROM beginning on the evening of October 10th (the date she received the vaccine). Petitioner's Memorandum of Law, filed Jan. 11, 2024, at *11-13 (ECF No. 43) ("Mem."). She relies on records documenting pain "ever since" vaccination. Mem. at *12. She also contends that it can be inferred from a November 2020 record (stating that she had discontinued exercising after vaccination) that the reason she did so is because of her vaccine-caused pain. *Id.*

Respondent argues that Petitioner has failed to preponderantly prove that she suffered the onset of shoulder pain and ROM limitations within 48 hours of vaccination. Respondent's Response, filed Mar. 11, 2024, at *5 (ECF No. 44) ("Resp."). She did not seek medical attention until 38 days after vaccination, at which point she reported a fever, sweats, and chills the night of vaccination and that she "then" had left arm pain for a period of seven days. Resp. at *5. Respondent interprets the word "then" as meaning that Petitioner "developed pain at some unspecified later time" *after* the fever, sweats, and chills that occurred the night of vaccination, and that it is "not clear when that development occurred." *Id.*

Although Petitioner again sought medical treatment in January 2021, now reporting pain "ever since" vaccination, Respondent characterizes this as "vague language." Resp. at *5. Furthermore, this visit occurred nearly three months after vaccination, and "[g]iven the passage of time, moreover, it was unlikely that [Petitioner] could still precisely recall the date of the onset of her pain." *Id.* Respondent emphasizes that there are "no notations in any record pinpointing onset of shoulder pain within forty-eight hours of vaccination." *Id.* at *6. Respondent views the records as "uniformly vague about the date of onset," and proposes crediting the earliest record, which Respondent asserts indicates that Petitioner's pain "began at some unspecified time after the initial systemic symptoms she experienced on the night of vaccination." *Id.* Respondent quotes language from decisions

6

by other special masters in *Pedri* and *Christopher* finding onset not to be close in time to vaccination.[7] *Id.* at *5-6.

Petitioner replies that "the medical records in this case are not vague about date of onset." Petitioner's Reply, filed Mar. 14, 2024, at *2 (ECF No. 45) ("Reply"). Petitioner argues that it is common for SIRVA petitioners to delay seeking care in hopes that their condition will resolve on its own, and a delay in seeking treatment is not, by itself, evidence that the onset of pain was not immediate, citing *Werning* and *Merwitz*.[8] *Id.*

Petitioner also challenges Respondent's assertion that the November 2020 record is unsupportive of a Table-consistent onset. Mem. at *11. Accepting this logic, she maintains, would require unreasonable inferences that are not supported by the record – inferring that "then" meant over 48 hours after vaccination, for example - contrary to the remaining medical records which suggest the onset of her pain was closer in time to vaccination. *Id.* Petitioner emphasizes that at her January 2021 appointment, she reported pain "ever since" vaccination, and asks that I consider the totality of the information provided in these records. Reply at *2.

In addition, Petitioner asserts that *Pedri* is "highly distinguishable" from this case for several reasons. Reply at *3. First, the *Pedri* petitioner first sought care seven weeks after vaccination, at which time she reported that her pain – in her shoulder *and other joints* – began four weeks earlier, which would place onset *more than two weeks* after vaccination. *Id.* The petitioner in *Pedri* did not relate her pain to vaccination until three months after vaccination. *Id.* In contrast, Petitioner consistently related her shoulder pain to vaccination, and did not complain of pain in other joints. *Id.* Unlike the *Pedri* petitioner, Petitioner "never reported a timeline of injury that was inconsistent with" onset within 48 hours. *Id.*

Petitioner adds that Respondent's claim that a petitioner must experience ROM limitations within 48 hours of vaccination is not consistent with the QAI for SIRVA. Reply at *3 (citing *Gurney v. Sec'y of Health & Human Servs.*, No. 17-481V, 2019 WL 2865490 (Fed. Cl. Spec. Mstr. Apr. 24, 2019). Instead, the QAI requires only that the onset of *pain* occur within 48 hours of vaccination. *Id.* Nonetheless, Petitioner argues that at her initial appointment in November 2020, she reported discomfort moving her arm, especially overhead or behind her back – suggesting that her ROM limitations did in fact occur within 48 hours of vaccination. *Id.* at *3-4.

---

[7] *Pedri v. Sec'y of Health & Human Servs.*, No. 18-1077V, 2023 WL 4927287 (Fed. Cl. Spec. Mstr. June 27, 2023) and *Christopher v. Sec'y of Health & Human Servs.*, No. 18-1210V, 2020 WL 2466601 (Fed. Cl. Spec. Mstr. Apr. 8, 2020).

[8] *Werning v. Sec'y of Health & Human Servs.*, No. 18-0267V, 2020 WL 5051154 (Fed. Cl. Spec. Mstr. July 27, 2020); *Merwitz v. Sec'y of Health & Human Servs.*, No. 20-1141V, 2022 WL 17820768 (Fed. Cl. Spec. Mstr. Oct. 11, 2022)

### C. Factual Findings on Onset

The record establishes that it is more likely than not that Petitioner's left shoulder pain began within 48 hours of vaccination. Petitioner sought care just over a month after vaccination (not a lengthy period of time), and related her left arm pain to that event. I have repeatedly stated that it is common for SIRVA petitioners to delay seeking medical treatment for a month – or longer – in the reasonable hope that the condition will resolve on its own. *See Shiver v. Sec'y of Health & Human Servs.*, No. 21-1961V, 2024 WL 4544185, at *11 (Fed. Cl. Spec. Mstr. Sept. 16, 2024) (finding evidence preponderantly established that onset of shoulder pain occurred within 48 hours of vaccination where the petitioner first sought care two weeks after vaccination); *Amor v. Sec'y of Health & Human Servs.*, No. 20-0978V, 2024 WL 1071877, at *6 (Fed. Cl. Spec. Mstr. Feb. 8, 2024) (noting that it is "common for petitioners in SIRVA cases to delay seeking care for weeks, or even months, in hopes that the pain will resolve without treatment" and finding onset was within 48 hours when Petitioner first sought care 23 days after vaccination); *Diaz v. Sec'y of Health & Human Servs.*, No. 20-1003V, 2023 WL 8440873, at *8 (Fed. Cl. Spec. Mstr. Nov. 1, 2023) (finding onset occurred on day of vaccination, even though the petitioner did not seek treatment until over three months later).

In addition, there is no requirement that a medical record state that a petitioner's pain began *specifically* within 48 hours in order for a claimant to succeed on a SIRVA Table claim. Instead, the standard for resolving factual questions (including the onset of pain) is whether the petitioner has demonstrated the disputed fact by a preponderance of the evidence. Section 13(a)(1); *Roberson v. Sec'y of Health & Human Servs.*, No. 21-2309V, 2025 WL 605724 (Fed. Cl. Spec. Mstr. Jan. 24, 2025) (stating that the "absence of a specific date" of onset in medical records is not "compelling or particularly meaningful," and finding onset within 48 hours where the petitioner sought care 23 days after vaccination and reported pain for two to three weeks at the time of vaccination).

Although Petitioner's initial treatment record leaves room for interpretation as to when her pain began, it *does* clearly link her pain to vaccination, stating that it began "after" vaccination. Ex. 4 at 50. And the January 2021 record states that her had been present "ever since" vaccination – which can reasonably be read to mean that her pain began immediately after vaccination. This record is also relatively close in time to vaccination (dated less than three months thereafter), bolstering its evidentiary value. Petitioner's testimonial evidence provides further corroboration.

I do not agree with Respondent that the November 2020 record stating that she had fever, chills, and "then" her arm was painful, suggests that her pain likely began more than 48 hours after vaccination. In the context of the other medical records, particularly the January 2021 record documenting pain "ever since" vaccination, along with supporting testimonial evidence, I find it is more likely that Petitioner's pain began within 48 hours of vaccination.

Respondent's contentions about timing of ROM limits have far less of a legal basis. There is no requirement in the QAI that a petitioner demonstrate that his or her ROM limitations began within 48 hours of vaccination (unlike with pain). *Petty v. Sec'y of Health & Human Servs.*, No. 19-1332V, 2024 WL 5381961, at *4 (Fed. Cl. Spec. Mstr. Sept. 24, 2024); *Portee v. Sec'y of Health & Human Servs.*, No. 16-1552V, 2018 WL 5284599, at *11 (Fed. Cl. Spec. Mstr. Sept. 14, 2018) (discussing QAI language). Thus, for purposes of establishing that onset, it does not matter when Petitioner's limited ROM began.

### D. Factual Findings on Remaining SIRVA QAI Criteria and Statutory Requirements

The remaining QAI and statutory requirements are not disputed, and I find that they are satisfied. The record does not contain preponderant evidence that Petitioner had a history of left shoulder pain or any other condition that would explain her post-vaccination symptoms. Exs. 4, 11. She exhibited reduced ROM, and her pain and ROM limitations were limited to the vaccinated shoulder. Ex. 4 at 55; Ex. 5 at 3. She received a covered vaccine in the United States. Ex. 1. She experienced residual effects of her injury for more than six months. Ex. 6 at 4. And she states that she not previously collected an award or settlement, nor are there any civil actions pending, for her vaccine-related injury. Ex. 3 at ¶ 3.

I find that Petitioner has established by a preponderance of the evidence that all Table SIRVA and QAI requirements are established. Further, she has established all statutory requirements for entitlement. Thus, Petitioner is entitled to compensation.

## III. Damages

### A. Legal Standard

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Section I-II of *Timberlake v. Sec'y of Health & Human Servs.*, No. 20-1905V, 2025 WL 721730 (Fed. Cl. Spec. Mstr. Feb. 19, 2025).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.00." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and

9

suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[9]

### B. Parties' Damages Arguments

Petitioner requests an award of $70,000.00 for actual pain and suffering. Mem. at *15. Petitioner relies on three reasoned decisions to defend this request: *Dagen*, *Morgan*, and *Garrett*.[10] *Id.* at *16-17. Petitioner asserts that her case is like *Dagen* in that both petitioners had injuries that were largely improved by seven months after onset. *Id.* at *16. However, Petitioner attended more PT sessions, meriting a slightly higher award. *Id.* And the *Morgan* petitioner's injury duration and course of treatment are also comparable. *Id.* at *16-17.

Respondent proposes "a pain and suffering award commensurate with awards in mild SIRVA cases," without recommending a specific amount. Resp. at *7. Respondent characterizes Petitioner's injury as "mild." *Id.* Respondent cites nine cases with awards between $35,000.00 and $65,000.00.[11] *Id.* at *11-12. Respondent emphasizes that Petitioner did not seek care until 38 days after vaccination; her treatment was limited to 21 PT sessions and over the counter medications; her highest pain level was five out of ten; she did not require an MRI; her symptoms persisted for seven and a half months, at which time she was feeling good – all indicative of a mild injury. *Id.* at *13.

---

[9] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[10] *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019) (pain and suffering award of $65,000.00); *Morgan v. Sec'y of Health & Human Servs.*, No. 20-1286V, 2022 WL 4717958 (Fed. Cl. Spec. Mstr. Sept. 2, 2022) (pain and suffering award of $63,000.00); *Garrett v. Sec'y of Health & Human Servs.*, No. 18-0490V, 2019 WL 2462953 (Fed. Cl. Spec. Mstr. Apr. 8, 2019) (pain and suffering award of $70,000.00).

[11] *Valdez v. Sec'y of Health & Human Servs.*, No. 21-0394V, 2024 WL 1526536 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (pain and suffering award of $35,000.00); *McGraw v. Sec'y of Health & Human Servs.*, No. 21-72V, 2024 WL 1160065 (Fed. Cl. Spec. Mstr. Feb. 15, 2024) (pain and suffering award of $37,500.00); *Ramos v. Sec'y of Health & Human Servs.*, No. 18-1005V, 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021) (pain and suffering award of $40,000.00); *Mejias v. Sec'y of Health & Human Servs.*, No. 19-1944V, 2021 WL 5895622 (Fed. Cl. Spec. Mstr. Nov. 11, 2021) (pain and suffering award of $45,000.00); *Kleinschmidt v. Sec'y of Health & Human Servs.*, No. 20-0680V, 2023 WL 9119039 (Fed. Cl. Spec. Mstr. Dec. 5, 2023) (pain and suffering award of $55,000.00); *Green v. Sec'y of Health & Human Servs.*, No. 20-0378V, 2023 WL 6444421 (Fed. Cl. Spec. Mstr. Sept. 1, 2023) (pain and suffering award of $55,000.00); *Aponte v. Sec'y of Health & Human Servs.*, No. 20-1031V, 2022 WL 4707180 (Fed. Cl. Spec. Mstr. Sept. 2, 2022) (pain and suffering award of $60,000.00); *Klausen v. Sec'y of Health & Human Servs.*, No. 19-1977V, 2023 WL 2368823 (Fed. Cl. Spec. Mstr. Feb. 2, 2023) (pain and suffering award of $60,000.00); *Foster v. Sec'y of Health & Human Servs.*, No. 21-0647V, 2024 WL 1073009 (Fed. Cl. Spec. Mstr. Feb. 6, 2024) (pain and suffering award of $60,000.00).

Respondent also argues that the cases Petitioner cites are distinguishable. Resp. at *13-14. The *Dagen* petitioner sought treatment only two weeks after vaccination – three weeks sooner than Petitioner – and treated with oral steroids and a steroid injection in addition to PT, while Petitioner only treated with PT and over the counter medications. *Id*. at *14. And the *Morgan* petitioner sought treatment only five days after vaccination, suggesting a more severe injury, while the *Garrett* petitioner experienced significant weakness in his arm, and missed his high school basketball season due to his injury. *Id*.

Petitioner argues that her case is distinguishable from the cases Respondent cites. Reply at *5-8. *Ramos*, *Mejias*, *Kleinschmidt*, and *Klausen* involved lengthier delays in seeking care and/or treatment gaps and less PT. *Id*. While Petitioner and the *Aponte* petitioner underwent similar amounts of treatment, Petitioner required more PT sessions, 21 compared to seven. *Id*. at *7.

### C.  Appropriate Compensation for Pain and Suffering

I find that Petitioner suffered a SIRVA that was on the milder side as compared with other cases. She treated with two visits to her student health center and 21 PT sessions. Her pain levels and ROM limitations were relatively mild, and when she finished treatment about six and a half months after vaccination, her shoulder was 80% improved.

The cases Petitioner cites are comparable to the facts of this case in terms of the duration of the injury. However, all three of the cited decisions involve petitioners who sought care much sooner than Petitioner did, and underwent MRIs – suggesting more severe injuries. While Petitioner attended more PT than the petitioners in the cases she relies on, the *Dagen* petitioner also received a cortisone injection, while Petitioner did not.

Of the cases cited by Petitioner, the closest is *Morgan* – although the *Morgan* petitioner sought care much sooner than Petitioner (only *six days* after vaccination), and had much greater pain levels and ROM limitations and underwent two MRIs. While I do not find that Petitioner's slight delay in seeking care defeats her claim, it is relevant to damages, in that it suggests that her injury was not as painful or disruptive as injuries in the cases she cites. In light of this and her generally less severe symptoms, I find that a somewhat lower award is appropriate.

### Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I GRANT Petitioner's motion for a ruling on the record, and find that Petitioner suffered an injury that meets the definition for a Table SIRVA and is entitled to compensation. I find that $55,000.00 represents a fair and appropriate**

**amount of compensation for Petitioner's actual pain and suffering**.[12] Additionally, I find that Petitioner is entitled to **$192.96 in out of pocket expenses.**[13]

Based on consideration of the record as a whole and arguments of the parties, **I award Petitioner a lump sum of $55,192.96, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[14]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[12] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[13] The parties agree that this amount is reimbursable. Mem. at *2, 18. Resp. at 14.

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.